EDWIN B. GOODELL, substituted administrator,

*v.*

G. ROWLAND MUNROE et al.

[Decided February 26th, 1916.]

1. Where an executor assigned a mortgage to himself individually and then individually assigned it to a bank, the president of which was one of the mortgagors, as security for money which he represented he was borrowing to pay legacies, the bank was not obliged to see to the application of the money loaned any more than the president would have been had he paid it in cash, and the substituted executor is not entitled to recover possession of the mortgage from the bank after the original executor had misappropriated the proceeds.

2. If the assignment of the mortgage by the executor to himself individually was void, he still held it as executor and as such could assign it to anyone advancing money for the better administration of the estate.

*Mr. Edwin B. Goodell, pro se.*

*Messrs. Wolber & Blake,* for the defendants.

STEVENS, V. C.

Andrew S. Taylor was the surviving executor of the estate of Anna A. Burnet. He was removed by the orphans court because he was unfaithful to his trust, and the complainant was appointed in his stead. I have to some extent described the situation in an opinion just filed in the case of *Goodell* v. *Taylor,* and I need only now say that the estate of Miss Burnet was quite large, that it consisted chiefly of personal property and that she gave legacies to a large number of legatees.

Andrew S. Taylor as executor held a mortgage given by one James J. Fitzsimmons for $5,000. It had been made payable to "Lewis P. Taylor and Andrew S. Taylor, executors under the last will and testament of Anna A. Burnet, deceased" and secured a bond of even date given by Fitzsimmons and Emile C. Bataille. Andrew S. Taylor, after the death of his co-executor, informed Bataille, who was president of the American National Bank and who had become the owner of the property mortgaged, that "it was of great importance that he receive the money" (on the mortgage) "with as little delay as possible, because the legatees were clamoring for their money." Bataille referred the matter to Mr. Munroe, the bank's attorney. Mr. Munroe's statement is as follows: Taylor said that it was arranged between him and Bataille that the mortgage should be used as collateral to obtain a loan from the bank.

"He explained to me that his first idea was * * * sell the mortgage to the bank and that Mr. Bataille explained as a national bank they did not and could not hold mortgages except as collateral; that it was then his intention to give a note and give the mortgage as collateral, but when he came to think of it he said he didn't feel that he had any authority to pledge the credit of the estate in such a transaction, so he was going to assign the mortgage to himself individually, give his individual note and give the mortgage which he had assigned to himself individually as collateral for the payment of the note, and then when Mr. Bataille found it convenient to pay the mortgage one transaction would cancel the other."

Taylor as executor thereupon assigned the mortgage to himself "individually." Then he assigned it to Mr. Munroe as trustee for the bank, and gave the bank a demand note for $5,000. The bank lent the money and Taylor misappropriated the greater

part of it. The claim now is that the bank must return the bond and mortgage, for the reason that the transfer from Taylor as executor to himself individually was illegal and that the bank had notice of it.

The will was admitted to probate in the year 1908. The transaction in question occurred in October, 1912. The principal of the mortgage was due and the executor was asking for it as he had a right to do and as it was his duty to do. If, under circumstances like these, the executor had himself advanced the money and had paid it to the legatees, he certainly could have reimbursed himself out of the mortgage money when paid, and if he had taken the mortgage before it was paid instead of the mortgage money when it was paid, I fail to see how he would have been guilty of a breach of trust.

As the bank viewed the transaction, what was contemplated did not differ in substance from the case supposed, except that payment to the legatees was to follow instead of preceding the receipt by Taylor of the money. Under such circumstances, why was the bank any more bound to see to the application of the purchase-money than it would have been had he sold the mortgage to it?

But if we assume that the assignment of the mortgage to himself, in the way in which it was attempted was simply nugatory and that he still held it as executor, he could, as executor, have pledged it to anyone who advanced money upon it to enable him the better to administer the estate. 2 Wms. Ex. (5th Am. ed.) *840. In the note to the leading case of Elliot v. Merryman, 1 Lead. Cas. Eq. *65, it is said that "it is a general rule that a person who purchases or takes a mortgage from an executor or administrator is not bound to see to the application of the purchase-money." In whatever way, then, we view the matter it is, as to the bank, valid in law. Under the facts which are not in dispute, the executor sought the money on the ground that he needed it to pay legatees their legacies. The representation was true in fact. There was nothing in the form of the transaction that could have led anyone to suspect that Taylor was contemplating a misappropriation of the money.

The bill should be dismissed, but under the circumstances I do not think complainant should pay costs.